UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
WILLIE D. MCCLAIN                          :
                                           :
                Plaintiff,                 :
                                           :   05 CV 3916 (TPG)
         - against -                       :
                                           :   **OPINION**
ORANGE COUNTY CORRECTIONAL                 :
FACILITY, BARBARA STOCKDALE, AND           :
GEORGE FONSECA,                            :
                                           :
                Defendants.                :
                                           :
------------------------------------------x

Plaintiff Willie D. McClain brings this action under 42 U.S.C. § 1983, alleging that defendants Orange County Correctional Facility, Barbara Stockdale, and George Fonseca violated his Eighth Amendment right against cruel and unusual punishment by their deliberate indifference to his serious medical needs.

Plaintiff filed his original complaint in this action on April 18, 2005, and named as defendants Medical Department of Orange County Correctional Facility, Linda Hunter, Slockdale B., George Fonseca, Melin, and John Doe. On March 23, 2006, plaintiff filed an amended complaint, which replaced defendant John Doe with Donald Lien. On March 21, 2008, this court dismissed defendants Linda Hunter, Melin, and Donald Lien from this action, because they could not be identified as either current or former employees of Correctional Medical Services. This

1

court also dismissed plaintiff's complaint as to the Medical Department of Orange County Correctional Facility, and directed that the caption be changed to name as a defendant Orange County Correctional Facility. Finally, this court granted plaintiff's request to file a second amended complaint.

The second amended complaint is now before this court, and defendants move to dismiss it pursuant to Fed. R. Civ. P. 12(b)(6). The motion is granted.

## THE COMPLAINT

The following is a summary of the allegations in the complaint.

Plaintiff entered the Orange County Correctional Facility on April 23, 2002. Upon his arrival, plaintiff spoke with a psychiatrist named Lynne Slurey, who performed his medical evaluation. During this evaluation, plaintiff informed Slurey that he suffered from a number of ailments, including HIV, "something of tuberculosis," the flu, and "ammonia," by which the court believes he meant pneumonia. He said that he experienced blurry vision, back pain along his spinal cord, chest pain, and trouble breathing. Plaintiff also told Slurey that he believed he had developed a brain tumor, which caused severe migraine headaches, and that his "thinking capacity was altered" because of an infection, which he described as "toxoplasmosis a encephalitis brain disease." Slurey told plaintiff that he was probably suffering from a virus, which might be connected to plaintiff's HIV condition, or to tuberculosis, but

that she needed to run tests to make this determination. Plaintiff therefore consented to take a tuberculosis skin test called a PPD test.

On April 26, 2002, plaintiff was called to the infirmary to take the PPD Test. Correctional Officer George Fonseca, who is a defendant in this action, administered the test by injecting some fluid into plaintiff's forearm. Several days before plaintiff received the results of the test, he went to see the nurse because his arm was bleeding. He told the nurse that the radiation that had developed on his arm was irritating him, and that his ailments had worsened so that he was now suffering from severe headaches and fever. He was also having trouble breathing and felt pain in his chest and along his spinal cord. The nurse plugged in a respiratory machine to help plaintiff breath, and gave plaintiff some medication for the pain. She told plaintiff to wait until his tuberculosis test results were ready before visiting the doctor.

Sometime between April 26 and April 28, 2002, a nurse named Barbara Stockdale, who is a defendant in this action, examined plaintiff's arm to determine the results of the PPD test. She believed the results were negative, and told plaintiff to return to his housing unit in the facility. Plaintiff, however, later remembered that he had tested positive for tuberculosis at Camp LaGuardia Homeless Shelter, where he had resided prior to entering the Orange County Correctional Facility, though he concedes that the medical records from this shelter did not indicate that he had tuberculosis.

On or about June 20, 2002, plaintiff filed several grievances with the facility doctor and the superintendent of the Orange County Correctional Facility, which stated that he had previously been diagnosed with tuberculosis, and believed he still had it. Sometime in June 2002, plaintiff requested another tuberculosis test, because he claimed nurse Stockdale had incorrectly read his PPD test. He also stated that he needed medical care, because he was suffering from a lung infection, and what he described as a "viral infection of a neurological mental disorder," in addition to tuberculosis. Plaintiff made another request to see the facility doctor.

On or about June 30, 2002, plaintiff was called to see a nurse named Linda Hunter. She had read plaintiff's facility medical records, and believed plaintiff was suffering from tuberculosis, as well as an infection, which plaintiff describes as "encephalitis an inflammation of the brain due to toxin." Hunter told plaintiff that the MRI of plaintiff's head and the x-ray of plaintiff's chest, which the facility doctor had previously taken, indicated a positive exposure to tuberculosis. Hunter told plaintiff that he could not return to his housing unit, because she was placing him in isolation. Hunter then consulted with the facility doctor and nurse Stockdale concerning plaintiff's test results. The facility doctor, however, told Hunter not to place plaintiff in isolation, because he wasn't on the doctor's list of inmates with tuberculosis.

Plaintiff was told to wait in the infirmary medical unit until "count time was over," at which time he was sent back to his housing unit.

Several days later, plaintiff was called to the infirmary medical unit. Plaintiff was told that the doctor had prescribed him medication, and he was given a vitamin, a Sudafed cold tablet, and two pills. When plaintiff asked about the pills, a nurse told him that the blue one was for people with a positive blood test for Toxoplasma Gondii and a T-cell count below 200, while the other pill was a therapy drug. Plaintiff was told that he would have to take the two pills for several months.

On or about September 4, 2002, plaintiff was called to the infirmary, where he underwent a physical examination. When he showed the nurse his arm, the nurse told him that while the records indicate that he had tested negative for tuberculosis, she believed his arm showed a positive exposure to tuberculosis and looked infected. The nurse had her assistant put some solution and antibiotic cream over the radiation on his arm. The nurse then examined plaintiff's lungs and told plaintiff that he had contracted viruses. When plaintiff indicated that he also had chest pain and back pain along his spinal cord, the nurse said that pain might be related to plaintiff's HIV condition. The nurse told plaintiff that therapy was recommended if the patient was in significant pain or discomfort, which caused respiratory problems and swelling. The nurse also told plaintiff that he had pneumonia, and gave plaintiff cough medicine and antibiotics, and told plaintiff to continue taking Sudafed.

5

Finally, the nurse scheduled plaintiff for an appointment with the facility doctor, because she did not have the necessary machine or instruments to undertake a complete exploration of plaintiff's lungs.

On or about September 14, 2002, plaintiff was called to see the facility doctor. After examining plaintiff, the doctor said he wanted to take some x-rays, but that the machine was broken. The doctor told plaintiff that he might have a lung infection, but that plaintiff was suffering from the flu, bronchitis, and what plaintiff describes as "neurologic complication problems." The doctor added that plaintiff had a radiation reaction that might mean he has tuberculosis. The doctor then prescribed plaintiff some antibiotics and vitamins, and told plaintiff he would call him back for further examination once the x-ray machine was fixed.

Plaintiff asserts that while at the Orange County Correctional Facility, he suffered from tuberculosis, pneumonia, HIV, weight loss, severe migraines, low white blood cell count, chest pain, difficulty breathing, and back pain along his spinal cord. These conditions made plaintiff unable to sleep, and caused him great pain.

### DISCUSSION

When deciding a motion to dismiss under Rule 12(b)(6), the district court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).

At the same time, the complaint must satisfy "a flexible plausibility standard," which means a pleader must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." See Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008). While this does not mean a complaint must include detailed factual allegations, "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The Eighth Amendment forbids cruel and unusual punishments. The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104, 106 (1976). The Eighth Amendment is violated when prison doctors manifest indifference in response to prisoner's needs or when prison guards intentionally deny or delay access to medical care or interfere with treatment. Id. The Court, however, also stated that "in the medical context, an inadvertent failure to provide medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." Id. at 105-06. Thus, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Id. at 106.

According to plaintiff's own allegations in the complaint, plaintiff received extensive medical attention from the medical staff at the Orange County Correctional Facility. The facility doctor and nurses were in no way indifferent to his needs and complaints. He was given various tests, including an MRI, a chest x-ray, and the PPD test. He was given various forms of medication. While there may have been a misdiagnosis of plaintiff's ailments or a disagreement about the proper diagnosis, this was not an indifference to plaintiff's medical condition.

The only allegations in plaintiff's complaint that concern defendant Fonseca pertain to Fonseca's administration of plaintiff's PPD test. But the claim here is really against the facility. The contention is that the facility should not have allowed Fonseca to administer the test by injecting fluid into plaintiff's arm when Fonseca was not a certified nurse or doctor. But this is only a negligence claim. In any event, plaintiff does not allege that Fonseca improperly administered the PPD test.

The only allegations in the complaint pertaining to defendant Stockdale concern her reading of plaintiff's PPD test as negative for tuberculosis. Again, this is merely a claim of negligence.

## CONCLUSION

The court grants defendants' motion to dismiss, and the case is dismissed with prejudice.

Dated: New York, New York
August 3, 2009

SO ORDERED

Thomas P. Griesa
U.S.D.J.

9